721 P.2d 666

ST. MARY'S HOSPITAL AND HEALTH CENTER, an Arizona corporation; St. Joseph's Hospital of Tucson, Inc., an Arizona corporation; John C. Lincoln Hospital and Health Center, an Arizona corporation; Holy Cross Hospital and Health Center, Inc., an Arizona corporation; Yuma Regional Medical Center, an Arizona corporation; Phoenix Baptist Hospital and Medical Center, Inc., an Arizona corporation; Walter O. Boswell Memorial Hospital, an Arizona corporation; Valley View Community Hospital, an Arizona corporation; St. Joseph's Hospital and Medical Center, an Arizona corporation; Holbrook Health Systems, Inc., dba Northland Medical Center, an Arizona corporation; Medical Environments, Inc., dba Bullhead Community Hospital, an Arizona corporation; Benson Hospital, an Arizona corporation; Bisbee Hospital Association, an Arizona corporation, dba Copper Queen Community Hospital; Northern Cochise Community Hospital, Inc., an Arizona corporation; Sierra Vista Community Hospital, Inc., an Arizona corporation; Winslow Memorial Hospital, an Arizona corporation; Arizona Medical Transport, Inc., an Arizona corporation; Valley Radiologists, Ltd., an Arizona corporation; National Health Laboratories, Inc., a Delaware corporation; Lincoln Institute of Surgery & Trauma, P.C., an Arizona corporation, Plaintiffs/Appellants,

v.

STATE of Arizona; Arizona Department of Health Services; and Arizona Health Care Cost Containment System Administration, Defendants/Appellees.

No. 2 CA-CIV 5660.

Court of Appeals of Arizona, Division 2, Department B.

March 19, 1986.

Review Denied July 1, 1986.

Gammage & Burnham by Richard B. Burnham and Curtis Ullman, Phoenix, and Richard B. Stewart, Cambridge, for plaintiffs/appellants.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., Phoenix, for defendants/appellees State of Ariz., and The Arizona Dept. of Health Services.

Allen, Kimerer & LaVelle by Russell A. Kolsrud, Phoenix, and Winston & Strawn

by Logan T. Johnston, III, Phoenix, for defendant/appellee Arizona Health Care Cost Containment System Admin.

## OPINION

LACAGNINA, Judge.

The Arizona hospitals and health care providers named as plaintiffs in this case (providers) appeal from a judgment in favor of the State of Arizona, Arizona Department of Health Services and Arizona Health Care Cost Containment System Administration (AHCCCS) (hereinafter referred to collectively as the 'state' unless the context calls for a different designation), dismissing their complaint without prejudice on the ground that they had failed to exhaust administrative remedies. The complaint claimed damages arising from the failure of Arizona Physicians IPA, Inc. (APIPA) to pay providers for services rendered to eligible indigent members of AHCCCS. Some services were furnished by providers pursuant to contract with APIPA and some by others without contract. Emergency services required by law were provided by both those contracting with APIPA and noncontractors. The providers failed to file claims and grievances for nonpayment with the state according to the terms of their contract with APIPA and the rules and regulations of AHCCCS. The complaint seeks to establish liability upon the state for APIPA's nonpayment for services provided to indigents because it is obligated to guarantee APIPA's payment to the providers directly and because it failed to monitor and assure the solvency of its contractor (APIPA).

Various theories are advanced by the providers to support the claimed liability of the state, including negligence, violations of federal and state statutes, rules and regulations, strict liability, restitution and deprivation of constitutional due process rights.

We affirm the judgment of dismissal without prejudice because we agree with the trial court that the providers failed to exhaust their administrative remedies.

## FACTS

APIPA was the successful bidder under the statutory plan for a contract with AHCCCS to provide payment to health care providers for medical services rendered to qualified members. The providers did not submit claims for unpaid services to AHCCCS and are seeking direct judicial relief rather than judicial review of a final administrative decision. This is the only fact needed to support the judgment of the trial court and applies equally to providers with and without subcontracts with APIPA, although the providers who executed subcontracts with APIPA expressly agreed to resort to administrative grievance process when claims were not paid.

## PROVIDERS MUST COMPLY WITH STATUTORY AND REGULATORY SCHEME PRIOR TO JUDICIAL REVIEW

The legislation which established AHCCS recognized that the participants in this type of system would inevitably have disputes over claims against each other and against AHCCCS. The legislature recognized that resolution of disputes over payment of claims should in the first instance involve the agency and expressly mandated that all claims for unreimbursed medical services must first be presented to and determined by AHCCCS. This specific mandate is provided by A.R.S. § 36–2903.01(B)(3):

B. The director shall:

\* \* \* \* \* \*

3. By rule and regulation establish a grievance and appeal procedure for use by providers, nonproviders who submit claims for payment for hospitalization and medical care to the system or to providers, counties, members, eligible persons, those persons who apply to be providers and those persons who apply to be members, including persons who have been determined to be ineligible for system coverage by a county eligibility worker or a special eligibility officer. Grievance procedures for providers and nonproviders shall cover grievances aris-

ing pursuant to this chapter. The grievance and appeal procedure shall contain provisions related to the notice to be provided to aggrieved parties, including notification of final decisions, complaint processes and internal appeals mechanisms. Any grievance and appeal procedure not specified pursuant to this paragraph but identified pursuant to title 41, chapter 6, article 1, also applies. Decisions of the director under the grievance and appeal procedure established pursuant to this paragraph are subject to judicial review under title 12, chapter 7, article 6.

AHCCCS was authorized by this statute to adopt regulations which would establish a grievance and appeal process for all claims for payments arising from the delivery of hospitalization and medical care under the system. Pursuant to that authority, AHCCCS adopted A.C.R.R. R9–22–803 and R9–22–805. Rule R9–22–803 makes the procedures stated therein exclusive, and the providers who had subcontracts also contractually agreed to the exclusiveness of this procedure. AHCCCS also adopted R–9–708(D) and R–9–709. See Appendix. The providers must comply with the requirements of these regulations and receive a final decision of the director before they can apply to the courts for judicial review. They are not entitled to judicial relief until the prescribed administrative remedy has been exhausted, including presentment of claims, hearing, review and final decision. *Myers v. Bethlehem Shipbuilding Corporation*, 303 U.S. 41, 50, 51, 58 S.Ct. 459, 463, 82 L.Ed.2d 638 (1938); *Breeland v. Southern Pacific Company*, 231 F.2d 576 (9th Cir.1955); *Minor v. Cochise County*, 125 Ariz. 170, 608 P.2d 309 (1980); *Mountain View Pioneer Hospital v. Employment Security Commission*, 107 Ariz. 81, 482 P.2d 448 (1971); *Campbell v. Chatwin*, 102 Ariz. 251, 428 P.2d 108 (1967); *Arizona Law Enforcement Merit System Council v. Dann*, 133 Ariz. 429, 652 P.2d 168 (App.1982); *Hinz v. City of Phoenix*, 118 Ariz. 161, 575 P.2d 360 (App.1978); *Ladd v. New York Central Railroad Co.*, 170 Ohio St. 491, 166 N.E.2d 231 (1960). The providers can assert any legal grounds they feel appropriate to support payment of their claims by the state through the administrative process and reserve those grounds for action by the court when judicial review is taken from a final decision of the director. *Valley Vendors Corporation v. City of Phoenix*, 126 Ariz. 491, 616 P.2d 951 (App.1980).

The contract and noncontract providers allege that they are owed money by APIPA for services furnished to APIPA members. In their complaint they seek payment of these claims by the state as damages. AHCCCS must first determine on a case-by-case basis whether or not the patients were eligible and the services properly reimbursable; whether the amounts charged were reasonable; whether the claims were timely filed, or there was good cause for late filing; whether the claims involved emergency care or were contract or noncontract; and whether there was compliance with other rules and regulations. All such questions are controlled by AHCCCS statutes and regulations and are best answered in the first instance by exercising its expertise in these matters. AHCCCS must also identify claims which are under $5,000 and therefore subject to arbitration rather than review and hearing. A.C.R.R. R9–22–803(C).

This is a classic case for requiring exhaustion of administrative remedies before judicial review pursuant to A.R.S. § 12–901. It allows AHCCCS the first chance to develop the factual background upon which to make the decisions without premature interruption, with a chance to correct its own errors in order to moot judicial controversies. *See Farmers Investment Co. v. Arizona State Land Department*, 136 Ariz. 369, 666 P.2d 469 (App.1982); *Campbell v. Mountain States Telephone and Telegraph Company*, 120 Ariz. 426, 586 P.2d 987 (App.1978).

We find no need at this time to address the arguments based on violations of state and federal statutes and regulations, constitutional provisions, negligence, guaran-

tee of payments, restitution, futility and loss of right to a jury trial. These claims are inextricably intertwined with the claims for nonpayment for medical and hospital services provided, and exhaustion of administrative remedies is required. *Heckler v. Ringer*, 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Homewood Professional Care, Ltd. v. Heckler*, 764 F.2d 1242 (7th Cir.1985).

■ There is no merit to the providers' claim that they need not exhaust the ad-ministrative remedies because one of their theories is a violation of 42 U.S.C. § 1983. The state is not a "person" within the meaning of § 1983. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Bennett v. California*, 406 F.2d 36 (9th Cir.1969), *cert. denied* 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969); *Challenge, Inc. v. State, ex rel. Corbin*, 138 Ariz. 200, 673 P.2d 944 (App.1983).

Affirmed.

LIVERMORE, P.J., and BIRDSALL, J., concur.

## APPENDIX

**R9–22–708**            **HEALTH SERVICES**

**R9–22–708. Capitated contractors liability to non-contracting and nonprovider hospitals for the provision of emergency and subsequent care to enrolled members**

**A.** For purposes of program and contractor liability, an emergency medical or acute mental health condition shall be subject to reimbursement only until such time as the patient's condition is stabilized and the patient is transferable, or until the patient is discharged following stabilization.

**B.** In the event that an enrolled member cannot be transferred to a contractor of record facility following stabilization, such contractor of record shall pay for all appropriately documented medically necessary treatment provided such member prior to date of discharge or transfer at the following rates:

1. Non-contracting providers will be reimbursed at 95 percent of billed charges as filed with the Department.

2. Nonproviders will be reimbursed at 80 percent of billed charges as filed with the Department. Such provider's liability shall continue until such time as an appropriate transfer is achieved.

**C.** In the event that a member refuses transfer from a nonprovider or non-contracting hospital to a hospital affiliated with his contractor of record, such member shall be subject to liability for all costs incurred subsequent to the date of refusal when:

1. The member's refusal is irrevocable subsequent to consultation with his contractor of record.

2. The member has been provided and signs a written statement, prior to the date of transfer of liability, informing him of the medical and financial conse-quences of such refusal.

**D.** The Administrator may make payments on behalf of a contractor to a non-contractor or nonprovider hospital for emergency services furnished a contractor's member. Direct payment due such a provider may be made when a properly documented billing has been rendered by a non-contracting provider or nonprovider to a contractor and such billing remains unpaid following 30 days of receipt of valid accrued claims by such contractor. The Administrator shall reduce the capitation payment due a contractor by the dollar amount of payment made to a non-contracting provider or nonprovider, plus a ten percent administrative fee for each claim that is paid.

**Historical Note**

Adopted as an emergency eff. May 20, 1982 pursuant to A.R.S. § 41–1003, valid for only ninety days (Supp. 82–3). Former Section R9–22–708 adopted as an emergency now adopted and amended as a permanent rule eff. Aug. 30, 1982 (Supp. 82–4). Former Section R9–22–708 repealed, new Section R9–22–708 adopted eff. Oct. 1, 1983 (Supp. 83–5).

Ch. 22                      ARIZONA HEALTH CARE
             COST CONTAINMENT SYSTEM (AHCCCS)

**R9–22–709.  Payments made on behalf of a contractor; recovery of indebtedness**

**A.**  The Administrator may make payments on behalf of a contractor in order to prevent a suspension or termination of AHCCCS services when either:

1.  No payment period is specified by subcontract and a valid accrued claim is not paid within 60 days of receipt by such contractor, or

2.  A valid accrued claim is not paid within the period set forth under subcontract.

**B.**  In the event a payment is made by the Administrator pursuant to this Article, the Administrator shall reduce the capitation payment due a contractor by the amount of payment made, plus a ten percent administrative fee for each claim that is paid.

**C.**  If a contractor or a subcontracting provider receives an overpayment or otherwise becomes indebted to the Department or the Administrator, the contractor or subcontracting provider shall immediately remit such funds to the Administrator for deposit in the AHCCCS fund.

**D.**  The action of the Administrator to recover amounts from contractors or subcontracting providers may include the following:

1.  Negotiation of a repayment agreement executed with the Administrator or the Director.

2.  Withholding or offsetting against current or future prepayments or other payments to be paid to the contractor or subcontracting provider.

3.  Enforcement of, or collection against, the performance bond or withhold described in R9–22–701, Subsection C.

**R9–22–803.  Grievance and appeal process**

**A.**  The provisions of this Section provide the exclusive manner through which contractors, non-contracting providers, their agents and subcontractors and non-providers who submit claims for payment for hospitalization and medical care to the system or to contractors, may grieve against the Department, its officers, employees, agents and the Administrator, its AHCCCS employees, agents and subcontractors in connection with any policy of the AHCCCS program.  This Section shall additionally apply, and shall be an exclusive manner of resolving grievances and complaints of any bidder or potential bidder, or to any agent or subcontractor of any such person, with respect to the AHCCCS provider bid and award process.  This Section shall additionally apply and shall be the exclusive manner for resolving any

grievance or complaint by any contract awardee concerning any AHCCCS policy, action or inaction prior to informal execution of a provider contract with the State of Arizona. The provisions of this Section may be supplemental and conditioned by specific additional terms contained in Requests for Proposals for AHCCCS Contractors and supplements thereto and in AHCCCS Provider Contracts and Terms and Conditions.

1. In the event a grievant has any grievance with respect to performance by the Department or Administrator, a grievant may institute a review proceeding by consulting with the Administrator within thirty (30) days following the adverse action by the Department or Administrator. Such consultation shall be conducted in good faith by both parties.

2. The Administrator shall investigate the grievance and make a written decision regarding the grievance within thirty (30) days of receipt of the grievance. Pending final resolution of the dispute, a grieving contractor shall proceed diligently with the performance of the contract in accordance with the Administrator's decision. In the event that the grievance addresses a policy contained in a request for proposal for AHCCCS contractors or involves a decision to award or reject a proposal to be an AHCCCS contractor, the Administrator shall review and issue a decision with respect to such grievance as expeditiously as possible and shall give priority to resolution of the grievance above all other pending grievance determinations.

**B.** In the event that a grievance cannot be resolved by the Administrator pursuant to Subsection A., Paragraphs 1. and 2., a grievant may file a request for review with the Director. In such cases, the Administrator shall forward a complete set of the grievance record to the Director.

1. Within thirty (30) days following receipt of the request for review, the Director shall hold a hearing presided over by a hearing officer who may be the Director or any qualified person or panel whom the Director may appoint. In the event that the grievance concerns a policy contained in a request for proposal for AHCCCS contractors, the hearing shall be held, and subsequent procedural steps shall be taken, as quickly as practicable after the filing of an appeal.

2. Within five (5) days following filing of the request for review and hearing with the Director, a contractor shall file the notice specified by A.R.S. § 41–1009 with the hearing officer.

3. The hearing officer shall rule on all motions, hold conferences for the purpose of clarifying procedural steps or legal or factual issues, conduct the hearing, grant continuations and otherwise rule on procedural matters and regulate the course and manner of the hearing.

a. All hearings shall be recorded.

b. All testimony shall be under oath or affirmation.

4. Within twenty (20) days after the conclusion of the hearing, the hearing officer shall prepare and circulate written findings of fact and conclusions of law and render a recommended decision. Each of the parties shall have five (5) days in which to respond.

5. The hearing officer may revise or supplement his original findings, conclusions and recommended decisions in light of responses made or may submit his findings, conclusions and recommended decisions and a copy of all responses to the Director, along with a legible or audible copy of the record of all documentary evidence admitted.

6. The Director will issue his decision, which may include findings of fact and conclusions of law, in writing and mail or otherwise furnish a copy thereof to a grievant.

7. The final decision made pursuant to this Subsection shall be a final administrative decision and may be reviewed as provided by A.R.S. §§ 12–901 through 12–914 except for those claims which are subject to arbitration, pursuant to A.R.S. § 12–1518.B.

8. Pending final decision of a dispute, a grieving contractor shall proceed diligently with the performance of the contract and in accordance with the Director's decision.

C. Where grievances cannot be settled by means of the procedures set forth in Subsection B., Paragraphs 1. through 8. of this Rule, and where the sole relief sought is monetary damages, in the amount of $5,000 or less, the parties shall use arbitration to further resolve disputes.

1. If the parties cannot otherwise agree as to the arbitrator, the services of the American Arbitration Association shall be used and the American Arbitration Association Commercial Arbitration rules shall apply. A single arbitrator shall be selected by alternately striking names from a list of arbitrators furnished by the American Arbitration Association.

2. The parties shall agree to waive oral hearings and specifically agree that the arbitrator shall decide any claim solely on the record made and evidence received at the administrative hearing. The parties shall further agree that each party shall bear its own costs and that any costs assessed by the arbitrator shall be equally divided between the parties to the claim.

3. Pending final resolution of the dispute, a grieving contractor shall proceed diligently with the performance of the contract and in accordance with the Director's decision.

D. Any contract modification accomplished pursuant to the use of the grievance procedures set forth in this Section shall be reduced to writing and shall be executed by the parties as a contract amendment.

E. Failure to submit a grievance in a timely manner shall constitute a failure to exhaust administrative remedies required as a condition to seeking a court ordered remedy.

### R9–22–805. Disputed emergency claims

A. Application. The provisions of this Section shall establish the procedures for resolution of disputes concerning payment for emergency services rendered to members and eligible persons.

1. The procedures established in this Section may be used to resolve disputes which meet the following requirements:

a. Disputes arising from services rendered after September 30, 1982.

b. Disputes not previously resolved and not presently the subject of litigation or arbitration.

c. Disputes involving AHCCCS contractors with current, active contracts with the Department.

2. The procedural guarantees specified by this Section shall not be construed to give rise to any right of action or other claim against the Department.

3. Contracting and non-contracting providers shall not bill, charge or make any claim against AHCCCS, a member, or an eligible person for services which are, or have been, the subject of review pursuant to this Section.

**B.** Claims filing. A contracting or non-contracting provider may submit a dispute concerning emergency services rendered to members by filing a claim with the Administrator and serving a copy of the claim on a contractor within thirty days after the claim is filed.

1. For the purposes of this Section, a dispute is deemed to arise upon the occurrence of the earlier of the following events:

a. A contractor sends notice of rejection or reduction of a bill for emergency services.

b. A contractor fails to pay a bill for care for emergency services within sixty days of receipt.

c. No claim shall be filed or prosecuted by an assignee of the claimant.

**C.** Claim content. The claim shall set forth, in clear and specific language, the facts establishing the nature of the claim as required on a form prescribed by the Director.

**D.** Claims dismissal

1. A claim shall be dismissed under the following conditions:

a. A claim is filed after the time limit;

b. A contractor's contract with the Department is terminated prior to the issuance of a recommended decision in the matter.

2. A claim shall not be dismissed for late filing or service if, prior to the issuance of a recommended decision in the matter:

a. The contractor or non-contracting provider shows good cause for the late filing or service.

b. The parties have stipulated in writing that the time for filing may be extended.

**E.** Administrator decision. The Administrator will conduct an investigation and render a written decision regarding the claim within sixty days of receipt of the claim.

**F.** Appeal. An aggrieved contractor or non-contracting provider may initiate an appeal with the Director by filing a notice of appeal no more than thirty days from receipt of the decision of the Administrator. Any person adversely affected by a decision of the Department resulting from an administrative hearing has the right to appeal such decision in accordance with the provisions of A.R.S. Title 12, Chapter 7, Article 6.

**G.** Standard of liability. A contractor's financial liability, if any, to another contractor or non-contracting provider, shall not exceed the lower of the following rates applicable at the time the services were rendered by the contractor.

1. The usual, customary and reasonable charges made to the general public by the contractor.

2. The capped fee-for-service rates for similar services specified in the schedule established by the Director or in the contract agreement with the Director.

**H.** Liquidation of liability

1. A contractor determined to be financially liable to another contractor or non-contracting provider, shall within thirty days of the effective date of a final decision:

a. Reimburse the contractor or non-contracting provider for the full amount of the determined liability.

b. Provide proof of reimbursement in such form as the Director may require.

2. Any amount of liability for which proof of reimbursement is not provided within the thirty day period shall be deemed unpaid. The Director will arrange to offset any unpaid liability, in accordance with applicable regulations and contracts.