J.K., a minor, By and Through R.K., et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Jack DILLENBERG, in his official capacity as Director of the Arizona Department of Health Services; Charles Carbone, in his official capacity as Director, Division of Behavioral Health Services, Arizona Department of Health Services; Mabel Chen,[1] in her official capacity as Acting Director, Arizona Health Care Cost Containment System, Defendants.

No. CIV 91–261 TUC JMR.

United States District Court,
D. Arizona.

Oct. 7, 1993.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Dr. Mabel Chen is substituted for Defendant Leonard Kirschner.

Leslie J. Cohen and Jane Hudson, Arizona Center for Law in the Public Interest, Tucson, AZ, and William E. Morris, Southern Arizona Legal Aid, Inc., Tucson, AZ, for plaintiffs.

Andrew M. Federhar and Timothy Berg, Fenemore Craig, P.C., Tucson, AZ, and C. Eileen Bond, Office of Atty. Gen., Phoenix, AZ, for defendants Jack Dillenberg and Charles Carbone.

Logan T. Johnston, Margo L. Friedland and Catherine M. Dodd, Johnston, Maynard, Grant & Parker, Phoenix, AZ, for defendant Mabel Chen, M.D.

*ORDER*

ROLL, District Judge.

## INTRODUCTION

The instant action challenges the sufficiency of behavioral health services provided eli-

gible children pursuant to the state of Arizona's Medicaid plan. The Second Amended Complaint alleges that state administration of that program violates controlling federal statutes and their implementing regulations. In particular, Plaintiffs contend that the state has imposed or knowingly sanctioned unlawful restrictions on the scope, duration, and amount of medically necessary mental health services, and similarly violated federal regulations governing their termination, suspension, and reduction. The Court previously certified this case as a class action, encompassing those children who are or who will become eligible for Title XIX behavioral health services furnished at Defendants' direction.

Defendant Jack Dillenberg is Director of the Arizona Department of Health Services ("ADHS"). Defendant Charles Carbone is Deputy Director of ADHS's Division of Behavioral Health Services ("DBHS"). DBHS is responsible for providing mental health services for Title XIX children. Defendant Mabel Chen is Acting Director of the Arizona Health Care Cost Containment System ("AHCCCS"), the single state Medicaid agency responsible for the provision of Title XIX children's mental health services in Arizona. DBHS, by contract, provides Title XIX mandated mental health services to children through six regional behavioral health authorities ("REBHA") located throughout the state.

Currently before the Court are the parties' cross-motions for summary judgment and the Defendants' individual and joint motions to dismiss. For the following reasons, Plaintiffs' motion for summary judgment is granted in part. Defendants' various joint and individual motions are denied.

## RELEVANT FEDERAL LAW

■ "In 1965, Congress established 'Medicaid,' a cooperative federal state health benefits assistance program designed to provide necessary medical services to low income persons." *Citizens Action League v. Kizer*, 887 F.2d 1003, 1005 (9th Cir.1989), *cert. denied*, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). Title XIX of the Social Security Act, codified at 42 U.S.C.

§ 1396 *et seq.*, requires that states which accept Medicaid funding provide early and periodic screening and diagnostic procedures to all Title XIX eligible children and to provide those children with treatment for all mental illnesses discovered through the screening process. State governments possess primary responsibility for administration of the program, but in so doing must abide by the requirements of the Act to qualify for receipt of federal Medicaid funds. *Beltran v. Myers*, 701 F.2d 91, 92 (9th Cir), *cert. denied*, 462 U.S. 1134, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983).

■ State participation in the Medicaid program is optional. If a state does elect to participate, it must comply with all provisions of the federal Medicaid statute and implementing regulations, except insofar as individual requirements may be waived by the federal government. *Id.*

States maintaining medical assistance plans approved by the Secretary of the United States Department of Health and Human Services receive federal financial assistance partly underwriting operation of their Medicaid program. 42 U.S.C. § 1396(b). These medical assistance plans designate services that the state will make available to eligible individuals. Arizona participates in the Medicaid program through its Arizona Health Care Cost Containment System ("AHCCCS"). A.R.S. § 36–2907.01. If a state chooses to participate, it stands to lose its federal funding if it fails to comply with the federal statute and regulations. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37, 101 S.Ct. 2633, 2636–37, 69 L.Ed.2d 460 (1981); *Mississippi Hospital Association, Inc. v. Heckler*, 701 F.2d 511, 515 (5th Cir. 1983).

■ State Medicaid plans must provide that the amount, duration, and scope of each covered service will remain sufficient or reasonably achieve the purpose of the service provided. 42 C.F.R. § 440.230(b). Federal regulations prohibit Defendants from denying or reducing the amount, duration or scope of the Title XIX covered services based on the diagnosis, type of illness or condition suffered. 42 C.F.R. § 440.230(c). States

must make payments to mental health treatment providers adequate to ensure that their services remain available to Medicaid recipients to at least the extent that such services are available to the general population. 42 C.F.R. § 447.204. Coverage is not boundless; an agency "may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). Finally, and crucial to the issues at stake here, whenever a state takes an action to reduce, suspend, or terminate Title XIX services, the state or local agency must give ten days written notice, an opportunity to appeal, and maintain services during the appeal process. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.-200–431.250.

## FACTUAL BACKGROUND

The uncontroverted facts are as follows. The Arizona Department of Health Services entered into a contract with CODAMA, the REBHA serving Maricopa County, to provide behavioral health services to eligible children in that area. The contract recognizes and requires CODAMA to comply with all applicable state and federal laws. In January of 1993, CODAMA introduced a new policy, with certain exceptions,[2] whereby Title XIX children residing in residential treatment centers or therapeutic group homes would be discharged from treatment in ninety days.

As to the individual named Plaintiffs,[3] Plaintiff K.P. has Tourette's Syndrome and resides at a residential treatment center in Scottsdale.[1] K.P.'s mother was orally informed that his stay at the center had been terminated pursuant to the new policy. When written notice came, it did not contain details explaining the reasons for K.P.'s termination nor any information regarding the appeals process. K.P.'s doctor recommends a continued stay at the facility.

Plaintiff S.M. suffers from bi-polar disorder, post-traumatic stress syndrome, and has a history of abuse. She resides at a residential treatment center in Phoenix. Her residence was terminated through written notification. However, the letter does not explain the reasons for termination, procedures for appeal and retention of services pending appeal. S.M.'s treatment team recommends continued residential placement as medically necessary.

## DISCUSSION

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

Class Plaintiffs move for summary judgment, requesting a ruling requiring Defendants to follow Medicaid statutory regulations mandating that treatment decisions be made on the basis of medical necessity, and that prior to termination or reduction of services, reasonable notice, including information regarding the patient's rights to and pending appeal, be given. Defendants cross-move arguing that Plaintiffs have no entitlement to prior notice, hearing, and continued services when there is a change in the amount or level of services.

### I.

Defendant Chen concedes that federal law requires notice of an action terminating, suspending, or reducing Medicaid eligibility or covered services, but that this requirement applies only to the state and not to independent contractors hired to perform certain services. In other words, it is Chen's position that the REBHAs are responsible for the decision making that Plaintiffs seek to enjoin, but that they function as private entities whose actions cannot be attributed to the state.

The state action inquiry divides along several broad lines. The first looks at whether the private actor was engaging in a

2. A child could remain in treatment if (1) the child had an Arizona Department of Education funded individual education plan, or (2) the provider successfully petitioned CODAMA to grant an exception.

3. Plaintiff S.P., although discussed at great length in Plaintiffs' papers, has since been voluntarily dismissed from the case.

4. Treatment has not been interrupted during this litigation.

traditional government function. A government function is one that has been typically performed by government exclusively. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352–54, 95 S.Ct. 449, 454–55, 42 L.Ed.2d 477 (1974) (no state action in the operation of a private utility company even though it was given virtual monopoly status and licensed by the state). The government function analysis is quite restrictive and the mere operation of business which could be performed by a government will not be construed as a public function. *Id.* See *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (no state action in the sale of a debtor's goods by a warehouseman even though a state law authorized such sales); *Hudgens v. National Labor Relations Board*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) (first amendment did not apply to privately owned shopping centers); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company town encompassing both residential and commercial districts was subject to the limits of the first and fourteenth amendments).

In a second category of cases, state action is based on the relationship between the government and activities of the alleged wrongdoer. State action will be found where the wrongdoer has been commanded or encouraged by government to engage in the activity which has harmed the aggrieved party. The decision is made ad hoc by "sifting facts and weighing circumstances." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). State action may be present when the actor is subject to extensive government regulation. The Supreme Court has rarely so held.

■ Alternatively, state action may be found in situations in which the private enterprise has multiple contacts with the government. Courts look to see if a "symbiotic relationship" between the public and private entities has been formed. *Id.* at 725, 81 S.Ct. at 861. State action may be present in those cases in which the government provides subsidies or aid. *Gilmore v. City of Montgomery*, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974) (city could not grant exclusive use of public facilities to racially segregated groups even on a temporary basis because that would constitute a subsidy to the racially discriminatory practices). There must be more than receipt of government funds for constitutional principles to apply, however.

The pivotal authority in this area is *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). In *Blum,* the Supreme Court found that due process principles did not apply to a nursing home's decision whether to discharge or transfer patients even though the home and patients received substantial government funding. Although patients suffered a diminution in medicaid benefits following discharge or transfer, the Court found that the reduction in benefits was merely the incidental result of the decision of a private entity.

Superficially, *Blum* would appear to govern and answer the state action question in the negative. However, numerous and significant facts distinguish this case from the nursing home involved in *Blum.* Plaintiffs herein are not complaining about the actions of a private provider but of a private entity that has been assigned the entire responsibility for a state-created service. REBHAs are exclusively devoted to those patients who can claim an entitlement to state support. In Plaintiffs' words, "[r]eference to state legislation confirms that the REBHAs are creatures of the sovereign will, conceived as vehicles for execution of evolving public policy on the mental health needs of the population." See *Arnold v. Arizona Department of Health Services*, 160 Ariz. 593, 594–96, 775 P.2d 521, 522–24 (1989) (the treatment of the chronically mentally ill has been deemed by the legislature to be the responsibility of the state).

■ Moreover, the private providers in *Blum* were not executing state responsibilities but were independent actors doing business with the state. Conversely, the state of Arizona has delegated the entire responsibility for its mandated health care duties to the REBHAs as its means of carrying out its public duties. Also, unlike the *Blum* situation, the REBHAs are subject to extensive state involvement. According to its contract, each REBHA is required to "comply with all Federal, State, and local laws, rules, regula-

tions, standards and executive orders, governing performance of duties under this Contract, without limitation to those designated within this Contract.... [and] shall comply with provisions of federal laws and regulations governing the Title XIX Program...." The contract further provides that the RE-BHA "shall comply with the provisions of A.R.S. § 36–2901 *et seq.* governing the Arizona Health Care Cost Containment System and all applicable rules promulgated by AHCCSA."

In sum, the Court finds that Class Plaintiffs are entitled to a declaration that the actions undertaken by CODAMA, to the extent that are later proven to be an impermissible reduction of services, were effected on behalf of the government and constitute state action.

## II.

■■■ Along a similar line, Defendants Dillenberg and Carbone argue that the RE-BHAs are independent contractors and therefore cannot be deemed to maintain an agency relationship with the state, rendering the state immune from Plaintiffs' complaints. "An independent contractor is a person who contracts with another to do something for [the other] but who is not controlled by the other nor subject to the other's right to control with respect to [the] physical conduct in the performance of ·the undertaking. [S]he may or may not be an agent." *Restatement (Second) of Agency* § 2(3) (1958). The existence of an agency relationship is determined by looking at the parties' intent. *Salt River Valley Water Users' Association v. Giglio,* 113 Ariz. 190, 549 P.2d 162 (1976). Right of control of one party by another is key. *Restatement (Second) of Agency* § 1 (1958). Thus, despite Defendants assertions to the contrary, an independent contractor and an agency relationship are not mutually exclusive concepts. *Restatement (Second) of Agency* § 14N (1958) ("One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor.").

As framed by Defendants, for an agency relationship to exist it must be "because the principal ha[s] the authority to issue orders that the contracting party, like CODAMA, could not ignore." Clearly, Defendants have exerted and continue to exert a great deal of control over the REBHAs. *See* Plaintiffs' Exhibit 19 (letter to CODAMA CEO from Defendant Carbone, ordering CODAMA to follow acceptable procedures during the pendency of this lawsuit, illustrating that they not only have the authority to exercise such control, they have actually exercised it). Additionally, the contract itself, not an insubstantial document, reserves numerous areas of control for the state.

■■■ Even assuming the REBHAs to be independent contractors, certain duties are non-delegable. *See Cooke v. Berlin,* 153 Ariz. 220, 223, 735 P.2d 830, 833 (App.1987) (state mental health center was liable for negligent acts of sub-contracting doctor because "the state undertook to provide a nondelegable duty to prove adequate care."). In a negligence case, the nondelegable duty exception "refers to duties for which the employer must retain responsibility, despite proper delegation to another. Such situations exist where the employer is under a higher duty to some class of person. This duty may be imposed by statute, by contract, by franchise or charter, or by the common law." *Ft. Lowell–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990). Pursuant to contract, the REBHAs have agreed to follow federal regulations.

The public policy implications of Defendants' position, if accepted, would be devastating. It is patently unreasonable to presume that Congress would permit a state to disclaim federal responsibilities by contracting away its obligations to a private entity. *See Cowan v. Myers,* 187 Cal.App.3d 968, 232 Cal.Rptr. 299 (1986), *cert. denied,* 484 U.S. 846, 108 S.Ct. 140, 98 L.Ed.2d 97 (1987). The law demands that the designated single state Medicaid agency must oversee and remain accountable for uniform statewide utilization review procedures conforming to bona fide standards of medical necessity. *See Visser v. Taylor,* 756 F.Supp. 501 (D.Kan.1990).

For the reasons canvassed above, Defendants Dillenberg and Carbone's argument is rejected.

### III.

■ Plaintiffs next ask that the Defendants be ordered to make all decisions to terminate or reduce services to class members based on a determination of medical necessity, provide prior notices of any reduction, termination, or suspension of services including discharge from residential treatment or group home, and follow procedures for reasonable notice and fair hearing.

Defendants counter that the relevant federal regulations cover an individual's initial and continued eligibility only, and not the type of determinations made herein. They characterize the procedures at issue here as "utilization review" and merely concern decisions regarding level of care. Defendants further distinguish the reduction or termination of a program-wide benefit from a change in the level of services, and allege that latter does not prompt due process concerns. *See Banks v. Secretary of the Indian Family and Social Services Administration,* 997 F.2d 231 (7th Cir.1993) (provider reimbursement determinations do not prompt due process concerns); *compare Kimble v. Solomon,* 599 F.2d 599 (4th Cir.) *cert. denied,* 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979); (notice and hearing required when a state changes its law to reduce or eliminate grants for *classes* of recipients). Indeed, the "agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). What the agency cannot do is to make eligibility determinations without due process protections.

On the record before it, the Court must conclude that neither side is entitled to summary judgment on these claims. The documents Plaintiffs produced speak of devising a course of treatment so that the patient may be released into a less restrictive environment within ninety days of admission to a restrictive facility. On its face, the discharge policy implicates only discretionary decisions as to how the REBHAs are to execute their contractual obligations, not a policy effecting entitlements.[5] Plaintiffs will have to present their case to a factfinder to make these determinations.

Likewise, Defendants have not met their corresponding burden of proving that the actions taken in this case constitute individual treatment decisions exempt from due process concerns. Defendants have raised unanswered questions of fact and thus summary judgment is inappropriate.

## DEFENDANTS' MOTIONS TO DISMISS

In addition to the parties' cross-motions for summary judgment, Defendants have filed individual motions to dismiss. All Defendants insist that the Plaintiffs have no claim because they have suffered no deprivation of services. They further complain that Plaintiffs have been vague in their allegations and there is little before the Court that supports the class allegation that medically necessary services have been denied.

■ In considering a motion to dismiss for failure to state a claim, the complaint is liberally construed and viewed in the light most favorable to the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The purpose of the motion to dismiss is to test the formal sufficiency of the pleadings that constitute the claim. 5A Wright & Miller, *Federal Practice and Procedure* § 1356 (1990). It is not "a procedure for resolving a contest about the facts or the merits of the case." *Id.* A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Abramson v. Brownstein,* 897 F.2d 389, 391 (9th Cir.1990).

Plaintiffs will ultimately bear the burden of *proving* that they have been denied medically necessary services. However, they have sufficiently *alleged* that they are in danger of suffering future harm due to Defendants'

---

**5.** States "may adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consis- tent with the objectives of the Act.'" *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977).

plan to withdraw certain services.[6] The Second Amended Complaint is sufficiently plead in order to survive a Rule 12(b)(6) challenge.

Defendants Dillenberg and Carbone raise the additional argument that this Court's jurisdiction is limited to deciding whether the agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Defendants' argument does not command dismissal. Indeed, the Court has been called on to determine whether the agency's actions are "in accordance with the law." Defendants have not shown that they are entitled to judgment.

## CONCLUSION

Plaintiffs' "Motion for Partial Summary Judgment" is **GRANTED IN PART** to the extent that the Court finds that state action is present in this case. Plaintiffs' motion in all other respects is **DENIED** because there are genuine questions of material in fact in dispute precluding summary judgment. Defendants' individual and joint "Motions for Summary Judgment" are **DENIED**. Defendants' individual "Motions to Dismiss" are **DENIED**.

---

**6.** Plaintiff K.P. is enrolled in a residential treatment center. His mother was contacted and told that he was to be discharged six days hence, even though K.P.'s doctor recommended against it. *See* Second Amended Complaint, ¶¶ 71, 72, 73.

In the case of S.M., Plaintiffs allege that CODA-MA has informed her that her funding for residential placement has expired. *See* Second Amended Complaint, ¶¶ 82, 85.