574 P.2d 850

**TUCSON POLICE AND FIREFIGHTERS ASSOCIATION, aka Local 479, International Association of Firefighters, AFL–CIO, and Fraternal Order of Police, Lodge No. 1, Tucson, Arizona, and all Commissioned Personnel of the Police Department, Fire Department, and Parks and Recreation Department (Park Guards) of the City of Tucson, who are Members of the Tucson Police/Fire Association, Appellants,**

v.

**The CITY OF TUCSON, a Body Politic, Lewis C. Murphy, Mayor of the City of Tucson, Joel D. Valdez, City Manager of the City of Tucson, Robert C. Cauthorn, Barbara L. Weymann, Rudy A. Castro, Ruben Romero, Douglas Kennedy, and Margot Garcia, Members of the City Council of the City of Tucson, Arizona, and Donald L. DeMent, City Clerk of the City of Tucson, Appellees.**

No. 2 CA–CIV 2535.

Court of Appeals of Arizona, Division 2.

Dec. 2, 1977.

Rehearing Denied Jan. 11, 1978.

Review Denied Feb. 7, 1978.

58

Waterfall, Economidis, Caldwell & Hanshaw, P. C. by Peter Economidis, Fred N. Belman, Tucson, for appellants.

Frederick S. Dean, City Atty., Tucson, for appellees.

McKendree & Lubin by John F. Sass, Phoenix, for amicus curiae American Federation of State, County and Municipal Employees.

## OPINION

RICHMOND, Judge.

Appellants are associations of police officers, firemen, and parks guards employed by the City of Tucson. They initiated a strike on September 22, 1975. In the following few days various members of the city council, the mayor and city manager met at different times with representatives of the associations in attempts to resolve the dispute over wage increases and certain fringe benefits demanded by appellants. Finally, the mayor and council met in special session on September 28 to consider a "memorandum of understanding" that had been approved earlier that date by appellants, subject to ratification by their members, and by the city manager, "subject to the initiation of procedures for the adoption of the agreements contained herein by the Mayor and Council of the City of Tucson in formal session."

The minutes of the special session reflect that after the memorandum was read aloud by the city manager, it was "ratified" on motion by a 4 to 3 vote of the mayor and council. Appellants' members thereafter returned to work, but the provisions of the memorandum never were implemented by the city. Instead, appellants' members received lesser raises in pay as part of an across-the-board increase to all city employees adopted by ordinance on December 30, 1975, and another similar increase to all city employees adopted by ordinance the following June.

Appellants sought enforcement of the "memorandum of understanding" by a complaint including two contract counts and a third count petitioning for special action. The first count sought specific performance or damages for breach of contract; the second count asked for treble damages for unpaid wages pursuant to A.R.S. § 23–355;[1] the third count alleged that the council by majority vote on September 28 had enacted specific legislation and asked that it be compelled by mandamus to comply with the terms of its legislative act.

On cross-motions for summary judgment, the trial court found against appellants on the undisputed facts. They appeal from the judgment dismissing their complaint, and pose five questions for review:

1. Is the "memorandum of understanding" a collective bargaining agreement?

2. Is the memorandum void because there is no legislative authority in the State of Arizona authorizing collective bargaining agreements?

---

1. § *23–355.  Action by employee to recover wages; amount of recovery*

   If an employer, in violation of the provisions of this chapter, shall fail to pay wages due any employee, such employee may recover in a civil action against an employer or former employer an amount which is treble the amount of the unpaid wages, together with costs and reasonable attorneys' fees to be allowed by the court on the basis of time and effort expended by counsel in behalf of the plaintiff-employee.

3. Did the City of Tucson have the power to enter into an agreement with its employees regarding wages, hours and conditions of employment?

4. Was the action of the mayor and council on September 28 sufficient to implement the memorandum?

5. Should the City of Tucson be estopped to deny the validity of its own acts?

We affirm the judgment of the trial court because our answer to the fourth question is no. We find it unnecessary to address the other questions.

On September 28 the salary range of appellants' membership was part of a position-compensation plan that had been adopted by the mayor and council by ordinance in accordance with provisions of the city's charter and code sections governing civil service. Chapter IX of the charter, which provides for exercise by the mayor and council of the city's legislative power, provides in material part:

"Sec. 11. Manner of repealing or suspending ordinances.

"No ordinance or section thereof shall be repealed or suspended except by ordinance adopted in the manner provided in this chapter."

The memorandum of understanding included the following:

"The City of Tucson, upon receiving notification from the [Tucson Police and Firefighters] Association of the ratification of this agreement, and that personnel of the Association have returned to their respective duty stations, shall forthwith initiate all necessary procedures and adopt all necessary ordinances and take all necessary action for the implementation of the agreements herein contained.

\*    \*    \*    \*    \*    \*

"This Memorandum of Understanding is subject to ratification by members of the Association and is subject to the initiation of procedures for the adoption of the agreements contained herein by the Mayor and Council of the City of Tucson in formal session."

Thus, while the memorandum was to become binding on appellants upon ratification by their membership, it was subject to something more than ratification by the mayor and council, i. e., adoption of whatever ordinances were required to implement its terms.

Further, the minutes of the September 28 meeting reflect that prior to the motion that the memorandum be ratified by the council, the city attorney informed the mayor and council that he would meet the following morning with counsel for appellants "in order to create a definitive text of the Memorandum of Understanding, which had just been read."

We conclude from the foregoing that it was not intended that the September 28 vote of the mayor and council ratifying the memorandum should create a binding agreement until the memorandum was implemented by legislative action in accordance with the city charter. In that respect the situation is analogous to one where it is clearly understood that the terms of a proposed contract, though tentatively agreed on, shall be reduced to writing and signed before it shall be considered as complete and binding on the parties. In such a situation, there is no contract until the terms are reduced to a writing. *Lininger v. Sonenblick*, 23 Ariz.App. 266, 532 P.2d 538 (1975).

Minutes of the September 28 meeting contain further evidence that the vote on the motion was never intended to bind the city without subsequent implementation. The charter and city code require an annual public hearing and recommendation by the civil service commission to the mayor and council of a position-compensation plan for the following fiscal year. According to the minutes, the vice-mayor, who moved that the memorandum be ratified, first

"\*    \*    \*    pointed out that the Civil Service Commission process on the compensation plan will continue. The Council will not act on any specific plan until the report has been completed by the Commission. If necessary, those increases provided for in this agreement will be made retroactive to the date recommended by the City Manager."

**60**

The record contains a memorandum dated September 29, 1975, from the mayor, informing all departments and city employees that the council had "reached agreement" with appellants regarding salary adjustments for the next two fiscal years. The memorandum concludes, however:

> "Final and formal action by the Mayor and Council on these matters cannot legally be taken until recommendations from the City of Tucson's Civil Service Commission have been received in the latter part of October, 1975."

Appellants' strong reliance on the California case of *Glendale City Emp. Ass'n, Inc. v. City of Glendale*, 15 Cal.3d 328, 124 Cal.Rptr. 513, 540 P.2d 609 (1975), cert. den. 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349, is misplaced. The Supreme Court of California expressly relied on a California statute, the Meyers-Milias-Brown Act, in holding that a memorandum of understanding on salary and wage increases, once approved by the city council, became binding upon the parties. In Arizona, if the city charter requires action by ordinance or by resolution, Division One of this court has held that anything short of the formal adoption of such measures is not binding on the city. *Rengstorf v. City of Glendale*, 14 Ariz.App. 4, 480 P.2d 27 (1971).

The "validity" of the action by the mayor and council on September 28 is not in question. In ratifying the memorandum of understanding by majority vote, they did what they purported to do, i. e., indicated their approval as of that date of the terms contained therein. Any agreement, however, was subject to enactment of an ordinance repealing the existing ordinance containing the position-compensation plan, and such an ordinance could only have been enacted after receipt of the civil service commission's recommendations. Without such legislative action, the September 28 vote fell short of creating any rights enforceable by appellants.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.