73 P.3d 637

Timothy L. MOULTON and Tanya Moulton, husband and wife; Kathleen M. Kassmann, a single person; Frank Kassmann and Janet Kassmann, husband and wife; Mark W. Clary and Mary Katherine Clary, husband and wife; John A. Sirovy and Sharon L. Sirovy, husband and wife; and Conde T. Sluga and Alice M. Sluga, husband and wife, Plaintiffs–Appellants,

v.

Janet A. NAPOLITANO, in her capacity as Governor of the State of Arizona; Gilbert Jimenez, in his capacity as Director of the Arizona Department of Commerce; Victor Mendez, in his capacity as Director of the Arizona Department of Transportation; David A. Petersen, in his capacity as Treasurer of the State of Arizona; Betsey Bayless, in her capacity as Director of the Arizona Department of Administration; Terry Goddard, in his capacity as the Arizona Attorney General; State of Arizona; Arizona Department of Commerce; Arizona Department of Administration; Arizona Department of Transportation, Defendants–Appellees.

No. 1 CA–CV 02–0642.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 5, 2003.

Timothy L. Moulton and Tanya D. Moulton, Tempe, Kathleen M. Kassmann, Scottsdale, Frank Kassmann and Janet Kassmann, Paradise Valley, Mark W. Clary and Mary Katherine Clary, Mesa, John A. Sirovy and Sharon L. Sirovy, Dewey, Conde T. Sluga and Alice M. Sluga, Scottsdale, Plaintiffs–Appellants In Propriis Personis.

Gallagher & Kennedy, P.A. By Mark C. Dangerfield, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

EHRLICH, Judge.

¶ 1 The Arizona Legislature enacted laws that provided grants, tax credits and other benefits for persons who owned vehicles powered by an "alternative fuel," *see* 2000 ARIZ. SESS. LAWS, ch. 405, §§ 1–47, defined as a fuel source other than gasoline or a combination using no more than 30% petroleum. ARIZ. REV.STAT. ("A.R.S.") § 1–215(4)(Supp.2002). In response, Timothy and Tanya Moulton, Kathleen Kassmann, Frank and Janet Kassmann, Mark and Mary Katherine Clary, John and Sharon Sirovy, and Conde and Alice Sluga (collectively "the Plaintiffs") purchased and modified automobiles with the expectation of these benefits. After the Legislature repealed some of these benefits and modified others, *see* 2000 ARIZ. SESS. LAWS, 7th Sp. Sess., ch. 1, §§ 1–41, the Plaintiffs filed suit in superior court against several state officials and agencies (collectively "the State"), alleging bad faith, breach of contract and various violations of their constitutional rights, and seeking declaratory and injunctive relief as well as damages and sanctions. In response to the State's motion, the court dismissed all of the claims against the State, citing a lack of jurisdiction because the Plaintiffs had failed to exhaust their administrative remedies before the Arizona Department of Revenue ("ADOR"). *See Hamilton v. State*, 186 Ariz. 590, 593, 925 P.2d 731, 734 (App.1996). On their appeal, we review *de novo* the Plaintiffs' challenge to the judgment based on their analysis of the superior court's jurisdiction and the doctrine of the exhaustion of remedies. *Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.*, 198 Ariz. 533, 536 ¶ 13, 11 P.3d 1072, 1075 (App.2000).

## BACKGROUND

¶ 2 Governor Jane Dee Hull signed the Forty–Fourth Arizona Legislature's Senate Bill 1504 on April 28, 2000 (the "April Law"). *See* 2000 ARIZ. SESS. LAWS, ch. 405. The April Law had many facets, primary of which was a financial incentive for Arizona taxpayers to purchase or modify automobiles to operate on alternative fuels. It also provided cash grants from the Clean Air Fund, *see* A.R.S. § 41–1516(A)(eff.Apr.28, 2000), "to persons for purchasing alternative fuel vehicles, converting conventionally fueled vehicles to operate on an alternative fuel or retrofitting alternative fuel vehicles." A.R.S. § 41–1516(D)(eff.Apr.28, 2000). These cash grants were equivalent to the available income-tax credit, but they were possible only as long as sufficient money remained in the Fund. A.R.S. § 41–1516(G)(2)(eff.Apr.28, 2000). The available tax credits under the April Law depended on the type of vehicle.[1]

¶ 3 The April Law provided other benefits to Arizona taxpayers with alternative-fuel vehicles. For example, drivers of such vehicles were permitted to utilize the high-occupancy-vehicle ("HOV") lanes on Arizona highways with only one passenger instead of two or more. 2000 ARIZ. SESS. LAWS, ch. 405, 12(E), as codified at A.R.S. §§ 28–737, 28–2416(E) (eff.Apr.28, 2000). Those driving alternative-

---

1. Credits for the purchase of new or used, low or ultra-low emission vehicles ranged from 10% to 50% of the vehicle's purchase price or certain minimum values between $2500 and $30,000, whichever was greater. A.R.S. § 43–1086(B)(1)–(8) (eff.Apr.28, 2000). Drivers who converted vehicles that weighed fewer than 12,000 pounds gross to permit the use of alternative fuel could qualify for a credit equal to the greatest of the following: (1) 100% of the conversion cost plus 30% of the vehicle's "actual purchase price," (2) 30% of the original manufacturer's base retail price or (3) $5000. A.R.S. § 43–1086(B)(11)(eff.Apr.28, 2000). Drivers who converted vehicles in excess of 12,000 pounds gross could obtain a similar incentive scheme of percentages of the vehicle's cost or price, except that the minimum credit was $30,000. A.R.S. § 43–1086(B)(9)(eff.Apr.28, 2000).

fuel vehicles were also permitted to use designated car-pool parking spots. A.R.S. § 28–877 (eff.Apr.28, 2000). Additionally, special license plates and stickers were available to qualifying vehicles, A.R.S. § 28–2416(B)(eff.Apr.28, 2000), and vehicle owners only had to pay a registration fee once. A.R.S. § 28–2003(A)(3)(b)(eff.Apr.28, 2000).

¶ 4 All of the Plaintiffs except the Clarys claimed to have purchased new vehicles that they converted to potential alternative fuel use; the Clarys converted a vehicle that they already owned. All of the Plaintiffs applied for benefits under the program prior to December 1, 2000, and all of them except the Sirovys received some tax credits for their vehicles pursuant to the program. The Sirovys were denied tax credits because they did not take possession of their vehicle until after December 1, 2000.

¶ 5 Confusion arose, however, when the Arizona Legislature passed a law in December 2000 amending the April Law ("the December Law"). *See* 2000 ARIZ. SESS. LAWS, 7th Sp. Sess., ch. 1. One major change in this new law affected the tax credits. Per the December Law, the tax credits received under the program could be recaptured by the State if the participants did not comply with some additional requirements, such as:

(1) the taxpayer must have had possession of the vehicle before December 1, 2000;

(2) the taxpayer could not transfer the vehicle's title for 36 months after receipt of the credit;

(3) the taxpayer was required to keep the vehicle registered in Arizona for 36 months after receipt of the credit;

(4) the taxpayer was required to demonstrate actual use of alternative fuel to power the vehicle, with different requirements depending on the type of alternative fuel used, and

(5) the vehicle was required to meet certain emission requirements.

A.R.S. § 43–1086(E)(Supp.2002). However, the December Law also afforded ADOR the power to "relieve a taxpayer of requirements prescribed under subsection E" if the ADOR director found that the taxpayer had acted in good faith and intended to provide power for the vehicle primarily with alternative fuel, and that fairness warranted relief. A.R.S. § 43–1086(F)(Supp.2002).

¶ 6 The Plaintiffs who received tax credits, i.e., all of the Plaintiffs but the Sirovys, received their credits after the December Law took effect. Although none of the Plaintiffs challenged the amount of the credits, some of them successfully applied for relief from certain requirements of subsection E. The Plaintiffs took no other action with ADOR, instead filing notices of claim with various named State agencies and officers, which claims were denied. *See* A.R.S. § 12–821.01 (Supp. 2002). The Plaintiffs then collectively filed a complaint in the superior court.

## ANALYSIS

■ ¶ 7 As a preliminary matter, we address the Plaintiffs' challenge to the State's use of an affidavit from Anthony Forschino in support of its motion to dismiss. Forschino served as Assistant Director of the now-defunct Office of Alternative Fuel Recovery and, at the time of the drafting of the affidavit, as an ADOR Tax Policy Administrator. In his affidavit, he avowed that he was familiar with all of the Plaintiffs' filings with both offices. The Plaintiffs characterize the affidavit as "undisclosed hearsay" and insist that it presented a jurisdictional question that should have been a matter for trial or at least an evidentiary hearing.

■ ¶ 8 The superior court did not err in considering the affidavit. When "jurisdictional fact issues are not intertwined with fact issues raised by a plaintiff's claim on the merits, the resolution of those jurisdictional fact issues is for the trial court." *Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App.1991). The jurisdictional fact in this case is whether the Plaintiffs had exhausted their administrative remedies; the merits of their claims concern whether they are entitled to more benefits than those that they received. Thus, the court properly considered these factual matters, and, in so doing, it "may consider affidavits, depositions and exhibits, and does not thereby convert a motion to dismiss for lack of jurisdiction to one for summary judgment." *Id.* Additionally, the court had the discretion to determine

whether an evidentiary hearing was necessary, *Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 506, 744 P.2d 29, 33 (App. 1987), and we find no abuse of its discretion in deciding that one was not required. Therefore, we proceed to analyze the superior court's ruling, viewing the record in the light most favorable to upholding that ruling, inferring any necessary findings reasonably supported by the evidence, and keeping in mind that the burden of demonstrating jurisdiction lies with the Plaintiffs. *Swichtenberg,* 171 Ariz. at 82, 828 P.2d at 1223.

■ ¶ 9 According to the doctrine of exhaustion of remedies,

> litigants may not seek "judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." The purpose of the doctrine is "to allow an administrative agency to perform functions within its special competence-to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." The doctrine promotes both judicial economy and administrative agency autonomy by preventing premature judicial intervention in inchoate administrative proceedings.

*Medina v. Ariz. Dep't of Transp.,* 185 Ariz. 414, 417, 916 P.2d 1130, 1133 (App.1995)(quoting *Estate of Bohn v. Waddell,* 174 Ariz. 239, 246, 848 P.2d 324, 331 (App.1992), *cert. denied* 509 U.S. 906, 113 S.Ct. 3000, 125 L.Ed.2d 693 (1993), and *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972))(other citations omitted). The doctrine is jurisdictional.

> [I]f parties have statutory recourse to an administrative agency that has authority to grant appropriate remedies, they must scrupulously follow the statutory procedures. If they fail to utilize all their administrative remedies, the superior court lacks jurisdiction to consider their claim.

**2.** While the judgment described itself as a dismissal for "lack of subject matter jurisdiction," "the doctrine of exhaustion of administrative remedies does not implicate subject-matter jurisdiction, but rather is a procedural prerequisite to judicial review of an agency determination." *Medina,* 185 Ariz. at 416, 916 P.2d at 1132. "[W]hen the exhaustion doctrine is properly in-

*Hamilton,* 186 Ariz. at 593, 925 P.2d at 734 (quoting *Estate of Bohn,* 174 Ariz. at 245–46, 848 P.2d at 330–31).[2]

■ ¶ 10 To resolve whether an exhaustion of administrative remedies is required, the court must decide whether an administrative agency has original jurisdiction over the subject matter. *Id.* In other words, the court must examine "whether the agency 'is specifically empowered to act by the Legislature.' " *Id.* (quoting *Minor v. Cochise County,* 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980)).

■ ¶ 11 The Plaintiffs did not only contest the amount of tax credits that they had received; they also challenged the requirements imposed by the December Law to keep those credits. Section 43–1086(F), A.R.S., though, provides ADOR with the authority to relieve a taxpayer of the requirements imposed by § 43–1086(E) for the receipt of alternative-fuel-tax credits. Indeed, although none of the Plaintiffs disputed with ADOR the amount of the credits that they had received, almost all of them applied to ADOR pursuant to § 43–1086(F) for relief from the § 43–1086(E) requirements to keep the credits, thus demonstrating their knowledge that the April Law created an administrative course of relief.

¶ 12 Additionally, the statute authorizing the alternative-fuel-tax credit states that, if the credit "exceeds the taxes due under this title on the claimant's income, or if there are no taxes due under this title," the taxpayer "may elect to be paid a refund." A.R.S. § 43–1086(G)(1). In *Hamilton,* this court held that, in reviewing a statute with similar language, because the statutory language "invok[ed] the administrative remedies that apply to refunds, this statute requires the taxpayers to submit their claims to [ADOR] before filing an action in tax court." 186 Ariz. at 593, 925 P.2d at 734 (reviewing A.R.S. § 43–1072).

voked in timely response to an action seeking judicial review of an administrative determination, the trial court may not exercise jurisdiction of the action." *Id.* at 417–18, 916 P.2d at 1133–34 (citing *Campbell v. Chatwin,* 102 Ariz. 251, 258, 428 P.2d 108, 115 (1967)). Thus, the superior court's choice of language has no effect on the validity of the judgment.

¶ 13 Specifically, the Plaintiffs could have obtained an evidentiary hearing upon request. A.R.S. § 42–1251(A)(1999). If they were not satisfied by the ruling, they could have appealed the decision to the State Board of Tax Appeals, *see* A.R.S. § 42–1253 (Supp.2002), which is independent of ADOR. *Ellman Land Corp. v. Maricopa County,* 180 Ariz. 331, 337, 884 P.2d 217, 223 (App.1994) (citing what is now A.R.S. § 42–1252(A)(1999)). "Only then, and only if the administrative appeal [was] unsuccessful," could the Plaintiffs have filed an action in superior court. *Hamilton,* 186 Ariz. at 593, 925 P.2d at 734 (citing what is now A.R.S. § 42–1254 (Supp.2002)).

¶ 14 This court has unfailingly held that tax matters must be exhausted within ADOR before being brought in superior court. *See, e.g., Ariz. Dep't of Revenue v. Dougherty,* 198 Ariz. 1, 3 ¶ 15, 6 P.3d 306, 308 (App.2000) ("Exhaustion of administrative remedies is therefore a prerequisite to bringing a tax court action for a refund."), *aff'd in relevant part,* 200 Ariz. 515, 29 P.3d 862 (2001); *Hamilton,* 186 Ariz. at 593, 925 P.2d at 734; *Kerr v. Waddell,* 185 Ariz. 457, 464, 916 P.2d 1173, 1180 (App.1996); *Estate of Bohn,* 174 Ariz. at 245–46, 848 P.2d at 330–31. Additionally, we have consistently rejected the argument that the administrative process is permissive. *Hamilton,* 186 Ariz. at 593–94, 925 P.2d at 734–35. Because the Plaintiffs complain about government benefits for which the Arizona Legislature has provided a mandatory administrative remedy, the doctrine of exhaustion of remedies applies. *Id.* at 593, 925 P.2d at 734.

¶ 15 The Plaintiffs contend, though, that this matter is not "a tax case" but, instead, "a constitutional case," and, in fact, in their complaint, they did not name ADOR as a defendant. Rather, they alleged, *inter alia,* that the various named state officers and agencies denied them their constitutional rights, and they sought declaratory and injunctive relief in addition to money damages.[3]

¶ 16 When alleged constitutional violations are "inextricably intertwined" with government benefits for which administrative remedies exist, the consistent trend in federal and state courts is to uphold the requirement of an exhaustion of remedies. For example, in *Heckler v. Ringer,* 466 U.S. 602, 609–11, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), Medicare recipients who had obtained surgical procedures sought declaratory relief that the procedures had been "reasonable and necessary" and that the United States Department of Health and Human Services was required to reimburse those costs pursuant to federal law. Reviewing this complaint, the Court concluded that it made "no sense to construe [these] claims … as anything more than, at bottom, a claim that they should be paid for their [surgeries]." *Id.* at 614, 104 S.Ct. 2013. The Court added that the claimants' requested relief of "declaratory and injunctive relief and not an award of benefits" was of "no importance." *Id.* at 615, 104 S.Ct. 2013. Rather, because the alleged constitutional violations and the denied benefits were "inextricably intertwined," "all aspects of [the] claim should be channeled first into the administration process [that] Congress has provided for the determination of claims for benefits." *Id.* at 614, 104 S.Ct. 2013.

¶ 17 This court has cited and adopted the reasoning of the Court in *Heckler. See, e.g., St. Mary's Hosp. & Health Ctr. v. State,* 150 Ariz. 8, 10–11, 721 P.2d 666, 668–69 (App.1986)(alleged "violations of state and federal statutes and regulations, constitutional provisions" were "inextricably intertwined with the claims for nonpayment for medical and hospital services provided")(citing *Heckler* ); *Zeigler v. Kirschner,* 162 Ariz. 77, 85, 781 P.2d 54, 62 (App.1989)(following *St. Mary's* ). The Plaintiffs give no reason to abandon this analysis.

■ ¶ 18 Of course, the exhaustion of remedies rule should not be summarily applied under certain circumstances. These are cases in which the remedy is permissive under the authoriz-

---

3. In addition to declaratory and injunctive relief, the Plaintiffs sought monetary damages. They stated in their complaint that "the grant or grant substitutes were thousands of dollars less than the amount to which [they] were entitled under the April Law." In their prayer for relief, the Plaintiffs also asked for "compensatory damages according to proof."

ing statute; in which jurisdiction of the agency is being contested; in which the agency's expertise is unnecessary; or in which irreparable harm will be caused if the rule is followed.

*Univar Corp. v. City of Phoenix,* 122 Ariz. 220, 224, 594 P.2d 86, 90 (1979). Additionally, a litigant should not be required to exhaust administrative remedies when such an effort would be futile. *Hamilton,* 186 Ariz. at 594, 925 P.2d at 735.

¶ 19 The ADOR procedure is not permissive, though. *See id.* at 593–94, 925 P.2d at 734–35. Accepting such, at least in the alternative, the Plaintiffs proceed to argue a combination of the exceptions to the requirement that there be mandatory compliance with the administrative procedures. They maintain that, because they sought declaratory and injunctive relief, ADOR lacks the expertise to resolve their claims. They contend also that any administrative action would have been futile not only because ADOR lacks the jurisdiction to consider constitutional arguments, *see McCullough v. Wittner,* 314 Md. 602, 552 A.2d 881, 884 (1989)(Simply because an agency lacks the "power to grant the particular type of relief sought does not necessarily mean that the agency lacks jurisdiction over a matter or that the administrative remedy need not be invoked and exhausted."), but because ·ADOR already decided that relief could not be had. *See Baker v. ADOR,* TX 2002–000118 (Ariz. Tax Ct. Feb. 18, 2003 and Mar. 12, 2003)(minute entry and final judgment). On these last two points, jurisdiction and futility, the Plaintiffs are wrong, and, as discussed below, because they are wrong on these issues, all of their other arguments for an excuse from the application of the doctrine of exhaustion of remedies fail as well.

¶ 20 The Plaintiffs' argument regarding jurisdiction relies on a meaning of "jurisdiction" similar to that rejected in *Swichtenberg.* Although they are correct that ADOR is unable to declare a law unconstitutional, the Arizona Legislature has provided ADOR with the authority to consider whether a

taxpayer received the proper tax credit under any legal theory, including a constitutional one.[4] This court in *Estate of Bohn,* 174 Ariz. at 249, 848 P.2d at 334, made the distinction between ADOR's lack of "power to declare statutes unconstitutional" and the agency's authority to "appl[y] constitutional doctrines ... when resolving claims."

> We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation. Only the courts have authority to take action [that] runs counter to the expressed will of the legislative body.

*Id.* (quoting K. Davis, ADMINISTRATIVE LAW TREATISE, § 20.04 at 74 (1958)). We also rejected the Plaintiffs' notion that the Arizona Constitution requires that constitutional challenges be initiated in superior court, writing that the Constitution "neither expressly nor impliedly prevents the legislature from conditioning the exercise of the superior court's jurisdiction on the taxpayers' exhausting available administrative remedies." *Id.* at 246, 848 P.2d at 331. Finding that the Arizona Legislature has provided a mandatory administrative review process, this court concluded that taxpayers should "scrupulously follow" ADOR process, even when raising constitutional questions, *id.* at 245, 848 P.2d at 330, and held that, "[c]ontrary to the taxpayers' assertion, the board could have applied constitutional doctrines to their refund claims." *Id.* at 250, 848 P.2d at 335.

¶ 21 The Plaintiffs insist nonetheless that they are entitled to their desired form of declaratory relief: The December Law is unconstitutional and they should receive the benefits of the April Law. However, their "preference for a particular remedy ... [does not] determine[ ] whether the remedy before the agency is adequate." *Conn. Mobile Home Ass'n, Inc. v. Jensen's, Inc.,* 178 Conn. 586, 424 A.2d 285, 287 (1979), *quoted in Hunt v. Prior,* 236 Conn. 421, 673 A.2d 514, 522 (1996).

---

4. Similarly, this court will not reach a constitutional issue if a proper construction of the statute makes it unnecessary to resolve the action. *Goodman v. Samaritan Health Sys.,* 195 Ariz.

502, 505 ¶ 11, 990 P.2d 1061, 1064 (App.1999); *Petolicchio v. Santa Cruz County,* 177 Ariz. 256, 866 P.2d 1342 (1994).

If the [agency's] actions do not satisfy the aggrieved party, then [the party] may seek redress in the court system. The plaintiff may not choose its administrative remedy through the framing of its own complaint. If that were possible, the purpose of the exhaustion doctrine would be thwarted.

*Savoy Laundry, Inc. v. Town of Stratford,* 32 Conn.App. 636, 630 A.2d 159, 163 (1993). The possible plaintiffs are protected because ADOR recognizes "no limitation upon the grounds that the taxpayer may present to reduce or correct his assessment. As long as [they] assert[ ] these grounds in the petition, they are preserved for an action in superior court." *Valley Vendors Corp. v. City of Phoenix,* 126 Ariz. 491, 494, 616 P.2d 951, 954 (App.1980).

 ¶ 22 Additionally, the Plaintiffs did not limit their claims for relief from the application of the December Law to constitutional principles but cited tort and contract theories, in essence making their constitutional theories simply alternative legal theories for relief. *See Krohn v. City of Saginaw,* 175 Mich.App. 193, 437 N.W.2d 260, 263 (1988)(due process and takings claims evaluated as alternative theories of relief from agency decision that should be "raised in an appeal from the decision of the planning commission"). Given our traditional and proper reluctance to reach constitutional issues unless absolutely necessary and our appropriate preference to resolve cases on other grounds, *Goodman v. Samaritan Health Sys.,* 195 Ariz. 502, 505 ¶ 11, 990 P.2d 1061, 1064 (App.1999), "[i]f ... an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued." *Pub. Util. Comm'n of Cal. v. United States,* 355 U.S. 534, 539–40, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). We thus reject the Plaintiffs' attempt to circumvent the administrative process by the construction of their complaint. *See, e.g., Montgomery County v. Broad. Equities, Inc.,* 360 Md. 438, 758 A.2d 995, 1005

(2000)("claimant may not circumvent [administrative] proceedings by a declaratory judgment" even when claimant challenges facial validity of act).

¶ 23 Moreover, ADOR's expertise is not its constitutional knowledge but its ability to determine whether the Plaintiffs complied with the statutory requirements. The "special competence" of an agency is its ability "to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi,* 405 U.S. at 37, 92 S.Ct. 815. Ironically, the record that the ADOR process would have created well might have reduced if not eliminated the concerns that the Plaintiffs now have regarding the lack of a record.

 ¶ 24 Furthermore, the administrative action cannot be deemed futile if the agency has the power to provide some relief. *Estate of Bohn,* 174 Ariz. at 250, 848 P.2d at 335. Given that ADOR relieved some of the Plaintiffs from some of the requirements of A.R.S. § 43–1086(E), the administrative action proved to be effective, and, in fact, if the Plaintiffs had pursued the administrative remedies more fully, they might have received the benefits that they sought [5] and made this controversy moot. *See, e.g., W.E.B. DuBois Clubs of Am. v. Clark,* 389 U.S. 309, 312, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967).

¶ 25 Nor can the Arizona Tax Court's decision in *Baker* aid the Plaintiffs' futility argument. To begin, the Tax Court did not issue its *Baker* decision until months after the Plaintiffs filed their notice of appeal on August 13, 2002, *see* TX 2002–000118 (Ariz. Tax Ct. Feb. 18, 2003 and Mar. 12, 2003), so the Plaintiffs cannot claim that the decision influenced their determination to forego the administrative process and file a complaint. Neither can the Plaintiffs point to any ADOR policy announcement informing potential applicants that their credits would have been denied. *Compare White Moun-*

---

**5.** The only aspects of the April Law cited by the Plaintiffs as not specifically related to the tax credits and the requirements of A.R.S. § 43–1086 is the continued use of the HOV lane and the alleged necessity of a specific license plate. These so-called issues are of no concern because

qualified vehicles may continue to use the HOV lane even after the December Law, A.R.S. § 28–737(B) (Supp.2002), and vehicles may display a sticker instead of the special license plate. A.R.S. § 28–2416(E)(Supp.2002).

*tain Apache Tribe v. Hodel*, 840 F.2d 675, 677–78 (9th Cir.1988)(examples of futility include pre-announced decision by final administrative decision maker or existence of objective and undisputed evidence of administrative bias), *cited in Estate of Bohn*, 174 Ariz. at 250, 848 P.2d at 335. Nor can the *Baker* decision serve as a post-hoc justification to demonstrate that the Plaintiffs' action would have been futile. The decision in *Baker* was reached based on the arguments and facts of that case; it does not enshroud all potential applicants.

¶ 26 As the California courts have written in rejecting such a futility argument:

> In substance the contention is that if they learn upon hearsay or by analogy that the administrative board may take a certain action, the board may be ignored and its action treated as already taken. We should all be very much surprised, no doubt, to find such an assertion made in the judicial field. One might attempt, for example to bring an original suit in the Supreme Court on the theory that the local superior judge was possessed of a particular opinion opposed to the views of the plaintiff, but he would receive scant consideration. The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide.

*Abelleira v. Dist. Ct. of App.*, 17 Cal.2d 280, 109 P.2d 942, 953–54 (1941), *quoted in Wilkinson v. Norcal Mut. Ins. Co.*, 98 Cal. App.3d 307, 159 Cal.Rptr. 416, 420–21 (1979). For all of these reasons, we reject the notion that the *Baker* decision demonstrates the futility of the administrative process.

¶ 27 Finally, relying on *Zeigler*, the Plaintiffs also argue that compliance with the administrative process would have led to irreparable harm to them. 162 Ariz. at 86, 781 P.2d at 63. The harm they cite, however, is the requirement to undergo the administrative process now that they have filed their complaint, not any alleged harm from the process itself. We reject this argument as well as the Plaintiffs' other arguments for excuse from the application of the doctrine of exhaustion of remedies.

¶ 28 The Sirovys attempt to distinguish their facts from those of their fellow plaintiffs, alleging that, because they lacked a meaningful opportunity to exhaust their remedies, applying the doctrine to them is unjust. They assert that, although they began the process of purchasing their automobile in June 2000, the manufacturer did not deliver the vehicle to Arizona until February 2001, denying them possession of their vehicle before December 1, 2000, *see* A.R.S. § 43–1086(E)(1), and making them ineligible for the tax credit.

¶ 29 This argument does not exempt the Sirovys from the necessity of pursuing an administrative action. Although they were denied the tax credit for which they applied because they did not have possession of their vehicle before December 1, 2000, this denial of a credit was an administrative action that could have been challenged before ADOR.

¶ 30 Although the Sirovys received no tax credit, they are in an aggrieved position similar to that of the plaintiffs who complain that they received fewer tax credits than they claim they should have received. Just as the other plaintiffs could have challenged the tax credits they did receive through the ADOR administrative-review process, the Sirovys could have challenged the denial of any credits through the same ADOR process. The exhaustion doctrine applies equally to the Sirovys as to the others.

¶ 31 The superior court dismissed the Plaintiffs' complaint for want of jurisdiction. The Plaintiffs argue that, even if the exhaustion doctrine applies to the counts related to the tax credits, their claim pursuant to the public records law, A.R.S. § 39–121 *et seq.* (2001), should survive, and we agree.

¶ 32 The public records statute provides a separate cause of action for any person to challenge a state official's alleged refusal to provide public documents. A.R.S. § 39–121.02(A)(2001). Because no administrative agency is associated with the production of public documents, the exhaustion doctrine does not apply although the records claim in

this case is related to the administrative relief sought by the Plaintiffs. Moreover, given its separate statutory basis, the records request is not so "inextricably intertwined" with the claim for benefits as to require the dismissal of this cause of action with the claims relating to the tax credits. *See St. Mary's Hosp.*, 150 Ariz. at 10–11, 721 P.2d at 668–69.

¶ 33 The State contends that we should affirm the dismissal of the claim for public records because the Plaintiffs failed to present this issue in a special action as required by A.R.S. § 39–121.02, but we do not read the statute its way. Section 39–121.02(A) permits a person to "appeal the denial [of a request for public records] through a special action in the superior court, pursuant to the rules of procedure for special actions against the officer or public body." The State does not argue how the Plaintiffs failed to comply with any particular rule of procedure but only suggests that special actions are designed to produce the appropriate immediate relief. However, it does not raise a laches argument, which is the only time limit imposed on special actions. *State ex rel. Ariz. Dep't of Econ. Sec. v. Kennedy*, 143 Ariz. 341, 343, 693 P.2d 996, 998 (App. 1985).

¶ 34 Furthermore, the Plaintiffs' complaint was denominated in the alternative as one for special-action relief. Arizona courts have reviewed complaints including claims for special-action relief along with statutory or common-law claims without negative comment. *See Arnold v. Ariz. Dep't of Health Serv.*, 160 Ariz. 593, 595, 775 P.2d 521, 523 (1989)(complaint sought relief under federal law, special-action relief and declaratory relief); *Tucson Police & Firefighters Ass'n v. City of Tucson*, 118 Ariz. 57, 58, 574 P.2d 850, 851 (App.1979)(complaint included two contract counts and third count for special action).

¶ 35 We believe that the reference to the rules of procedure for special actions in A.R.S. § 39–121.02 provides no more than a procedure by which persons can bring an action pursuant to this statute, not a substantive requirement. We therefore reverse the superior court's dismissal of the Plaintiffs' action for public records and remand this matter to that court for proceedings consistent with this opinion.

## CONCLUSION

¶ 36 The judgment is affirmed in part and reversed and remanded in part.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and G. MURRAY SNOW, Judge.