209 P.3d 1059

**Mikayla BAILEY–NULL, Plaintiff/Appellant,**

v.

**VALUEOPTIONS; Meta Services, Inc., Defendants/Appellees.**

**No. 1 CA–CV 08–0156.**

Court of Appeals of Arizona, Division 1, Department D.

April 7, 2009.

Law Offices of Charles M. Brewer, Ltd., By David L. Abney, Phoenix, Co–Counsel for Plaintiff/Appellant.

Commerford Law, PLLC, By John A. Commerford, Phoenix, Co–Counsel for Plaintiff/Appellant.

Clark Hill PLC, By Russell A. Kolsrud, Mark S. Sifferman, Lisa M. Bliss, Scottsdale, Attorneys for Defendant/Appellee ValueOptions.

Renaud Cook Drury & Mesaros, PA, By Kevin R. Myer, Carol M. Romano, Phoenix, Attorneys for Defendant/Appellee META Services, Inc.

## OPINION

SWANN, Judge.

¶ 1 Plaintiff Mikayla Bailey–Null ("Bailey–Null") complains of services she received from ValueOptions, a state contractor engaged to provide behavioral health services to the public. We are asked to decide whether she was required to exhaust administrative remedies with the Arizona Department of Health Service's Behavioral Health Division before seeking judicial remedies for civil claims based on the Arizona Adult Protective

Services Act, the Arizonans with Disabilities Act, common law assault and battery, and medical malpractice. We hold that the exhaustion of remedies doctrine does not apply to these claims because the administrative agency in question lacks original jurisdiction over them. We therefore reverse the trial court's dismissal of Bailey–Null's complaint.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 ValueOptions was a Regional Behavioral Health Authority ("RBHA") that contracted with the Arizona Department of Health Services (the "Department") to provide behavioral health services to residents of Maricopa County, pursuant to Arizona Revised Statutes ("A.R.S.") § 36–3410 (2003). META Services, Inc. ("META") administered and operated the Psychiatric Recovery Center (the "PRC"), an urgent care psychiatric facility located in Phoenix. ValueOptions provided medical care and treatment to people in the PRC.

¶ 3 Bailey–Null was admitted to the PRC on September 10, 2004. She was held there for two days before she was transferred to another facility. In October 2004, Bailey–Null filed a grievance against ValueOptions alleging that she was improperly chemically restrained and that her right to treatment on a voluntary basis, her right to privacy, and other civil rights pertaining to behavioral health services were violated. ValueOptions issued a decision on the grievance, in which it ordered META to comply with the rules for using restraints and to improve the air quality in the PRC. It found all of Bailey–Null's other allegations unsubstantiated.

¶ 4 Bailey–Null appealed ValueOptions' decision to the Arizona Department of Health Services, Division of Behavioral Health Services (the "Division"). Her appeal was denied. Bailey–Null then requested an administrative hearing with the Division, which was held on April 11 and April 13, 2006. The Administrative Law Judge ("ALJ") issued an extensive ruling in July 2006. The ALJ determined that Bailey–Null's civil and privacy rights were violated because she was not allowed confidential use of the telephone, was denied access to her medical records, and

was denied pain medication without explanation. The ALJ also found that Bailey–Null was improperly and forcibly injected with medication against her will and without knowledge of the medicine being injected. In formulating appropriate remedies, the ALJ determined there was "not sufficient evidence to fashion a good remedy" and noted that the violations had been "confirmed" and made part of ValueOptions' and META's records, which was the main remedy Bailey–Null sought. Accordingly, the ALJ did not order any additional remedies. On August 30, 2006, the ALJ's decision was certified as a final administrative decision. Bailey–Null filed a motion for rehearing or review on September 28. On October 30, the Division declined review of the ALJ's decision and affirmed the decision. Bailey–Null had thirty-five days (until December 4) to file an appeal with the superior court.

¶ 5 On September 11, 2006, Bailey–Null commenced a civil action against ValueOptions and META (collectively, "Defendants") in the superior court. Bailey–Null asserted four causes of action: (1) abuse/neglect of a vulnerable adult; (2) violations of the Arizona Civil Rights Act and discrimination under the Arizonans with Disabilities Act; (3) assault and battery; and (4) medical malpractice. META answered the complaint, and ValueOptions moved to dismiss, arguing that Bailey–Null's failure to exhaust her administrative remedies deprived the court of jurisdiction. Bailey–Null responded that she was seeking damages in the civil action, which the agency in question lacked authority to grant.

¶ 6 On July 31, 2007, the court ordered additional briefing on two issues: (1) whether Bailey–Null needed to include all of her claims for relief, including those for monetary damages and relief for civil rights violations, within the administrative grievance process; and (2) whether the administrative grievance process could have resulted in an award of damages for the claims alleged in the complaint. The court issued its ruling on September 20, concluding in pertinent part as follows:

> Plaintiff filed a Motion for Rehearing or Review of this final administrative decision and prior to the denial of this Motion,

Plaintiff filed the instant lawsuit. Plaintiff never sought judicial review of the administrative proceedings pursuant to A.R.S. § 12–904. The parties have not produced any authority to demonstrate that monetary damages are unavailable as a remedy for the violations found by the ALJ in this case. Thus, the failure to impose a remedy is an issue that the Superior Court could have reviewed, along with a review of the allegations dismissed as part of the administrative process.

The court granted ValueOptions' motion to dismiss for Bailey–Null's failure to exhaust her administrative remedies. Bailey–Null timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B).[1]

## DISCUSSION

### I. Standard of Review

■ ¶ 7 The question whether the failure to exhaust administrative remedies bars a civil action is a question of law that we review *de novo*.[2] *Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.*, 198 Ariz. 533, 536, ¶ 13, 11 P.3d 1072, 1075 (App.2000).

¶ 8 By her own admission, Bailey–Null did not exhaust her administrative remedies before filing her civil action on September 11, 2006. Rather, she contends that she exhausted her administrative remedies when her motion for rehearing or review was denied on October 30, 2006.[3] The administra-

tive process therefore had not concluded when she filed her complaint.

### II. Exhaustion of Remedies

■ ¶ 9 Under the exhaustion of remedies doctrine, parties must avail themselves of all administrative remedies before seeking judicial relief. *Coconino County v. Antco, Inc.*, 214 Ariz. 82, 86, ¶ 8, 148 P.3d 1155, 1159 (App.2006); *Moulton v. Napolitano*, 205 Ariz. 506, 511, ¶ 9, 73 P.3d 637, 642 (App. 2003). "The purpose of the doctrine is 'to allow an administrative agency to perform functions within its special competence-to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.'" *Moulton*, 205 Ariz. at 511, ¶ 9, 73 P.3d at 642 (quoting *Medina v. Ariz. Dep't of Transp.*, 185 Ariz. 414, 417, 916 P.2d 1130, 1133 (App.1995)). The doctrine promotes judicial economy and administrative autonomy by establishing the point when a court may review an administrative action. *Id.; Coconino County*, 214 Ariz. at 86, ¶ 8, 148 P.3d at 1159. To determine whether a litigant is required to exhaust her administrative remedies, a court must first decide whether an administrative agency has original jurisdiction over the subject matter of the claims. *Moulton*, 205 Ariz. at 511, ¶ 10, 73 P.3d at 642. An agency has original jurisdiction if it "is specifically empowered to act by the Legislature."[4] *Id.* (quoting *Hamilton v.*

---

1. The final judgment dismisses the complaint against both ValueOptions and META.

2. The Defendants argue that because the motion to dismiss was a Rule 12(b)(1) motion, as opposed to a Rule 12(b)(6) motion, the trial court is not bound by the complainant's allegations and the facts are not deemed true. *See Moulton v. Napolitano*, 205 Ariz. 506, 510, ¶ 8, 73 P.3d 637, 641 (App.2003) ("When 'jurisdictional fact issues are not intertwined with fact issues raised by a plaintiff's claim on the merits, the resolution of those jurisdictional fact issues is for the trial court.'" (quoting *Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App.1991))). The sole issue on appeal is whether Bailey–Null was required to exhaust her administrative remedies before filing her complaint, which is a legal issue. Therefore, the factual merits of Bailey–Null's claims are irrelevant for purposes of this appeal and we make no assumptions concerning their accuracy.

3. Neither side has presented clear authority defining the point at which administrative remedies would have been exhausted. However, we note our disagreement with the superior court's implicit ruling that superior court review of the administrative determination would have been a component of exhaustion. *See Farmers Inv. Co. v. Ariz. State Land Dept.*, 136 Ariz. 369, 378, 666 P.2d 469, 478 (App.1982).

4. For example, the Legislature has determined that employment discrimination claims are subject to mandatory exhaustion requirements. *See* A.R.S. § 41–1481, *et seq.* (2004); *see also Ornelas v. Scoa Indus., Inc.*, 120 Ariz. 547, 587 P.2d 266 (App.1978) (holding that the timely filing of a state law employment discrimination charge with the Arizona Civil Rights Division is a jurisdictional prerequisite to a lawsuit).

*State*, 186 Ariz. 590, 593, 925 P.2d 731, 734 (App.1996)).

### A. Authority of the Agency

¶ 10 Arizona Revised Statutes § 36–3413(A) directs the Department to require all RBHAs, such as ValueOptions, to establish and implement a grievance and appeal process for individuals who receive services. Pursuant to its statutory mandate, the Department adopted Title 9, Chapter 21 of the Arizona Administrative Code ("A.A.C."), which sets forth a process for handling grievances and investigations of allegations of a rights violation [5] or a condition requiring investigation.[6] A.A.C. R9–21–402(B). Chapter 21 applies to ValueOptions. *See* A.A.C. R9–21–102 (chapter applies to all mental health agencies under contract with or supervised by the Department that are providing behavioral health services). We find nothing in Chapter 21 to suggest that the Legislature intended to vest the Department with jurisdiction to entertain civil damage claims.

### B. Original Jurisdiction

#### 1. Abuse/Neglect of a Vulnerable Adult Under the Arizona Adult Protective Services Act

¶ 11 Bailey–Null alleged that she was a vulnerable adult and that the Defendants abused and neglected her. Under the Arizona Adult Protective Services Act ("APSA"), A.R.S. § 46–451 *et seq.* (Supp.2008),[7] a vulnerable adult may file an action in superior court against a person or enterprise that has provided care and has endangered or injured the vulnerable adult by neglect, abuse or exploitation. Arizona Revised Statutes § 46–455(O) provides that "[a] civil action authorized by this section is remedial and not punitive and does not limit and *is not limited by any other civil remedy or criminal action or any other provision of law.* Civil remedies provided under this title are supplemental and not mutually exclusive."[8] (Emphasis added). This subsection "tries to ensure that other statutes do not limit an incapacitated or vulnerable adult from bringing his or her civil action." *Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.*, 217 Ariz. 606, 609, ¶ 10, 177 P.3d 867, 870 (App.2008).

¶ 12 According to the administrative regulations, a client[9] has all rights afforded by applicable law, including the right to "sue and be sued" provided by A.R.S. § 36–506 and the right to the same civil rights as all other Arizona citizens. A.A.C. R9–21–201(A)(1), (16). The regulations further provide that no mental health agency shall abuse, neglect or exploit a client. A.A.C. R9–21–203(A)(1). Pursuant to A.A.C. R9–21–203(B) and (C), the Department has authority to issue "special sanctions" to protect a client, and must report abuse, neglect or exploitation to the appropriate authorities "as required by A.R.S. § 46–454,"[10] but the regulations are silent regarding any authority to award monetary damages to the client. And nothing in A.R.S. § 36–3413 authorizes an award of monetary damages, which is the

5. The "Civil and Other Legal Rights" are listed in A.A.C. R9–21–201(A) and include: the right to be free from unlawful discrimination by the Department; the right to acquire and dispose of property; the right to religious freedom and practice; the right to privacy; the right to exercise all other rights, entitlements, privileges, and immunities provided by law; and the right to the same civil rights as all other citizens of Arizona.

6. A condition requiring investigation is "an incident or condition which appears to be dangerous, illegal, or inhumane, including a client death." A.A.C. R9–21–101(B)(16).

7. We cite the current version of the Act because no amendments material to our decision have occurred since the relevant period.

8. We reject the argument advanced by the Defendants at oral argument that this provision of APSA does not control because it is a general provision that conflicts with a specific regulation, A.A.C. R9–21–402(B). The language in APSA that its remedy "is not limited by any other civil remedy or criminal action or any other provision of law" evinces a clear legislative intent to preclude just such a construction.

9. A "client" is defined as a seriously mentally ill person being evaluated or treated for a mental disorder by an RBHA. A.A.C. R9–21–101(B)(11).

10. Arizona Revised Statutes § 46–454(A) requires certain classes of people who have responsibility for the care of a vulnerable adult to report to a peace officer or protective services worker their reasonable beliefs that abuse or neglect of the vulnerable adult has occurred.

only remedy Bailey–Null seeks for the alleged APSA violations.

¶ 13 For these reasons, we conclude that the Department does not have original jurisdiction over statutory APSA claims. The exhaustion of remedies doctrine therefore does not apply to that claim.

## 2. Discrimination in Violation of the Arizonans with Disabilities Act

¶ 14 Bailey–Null alleged that she was disabled and that the Defendants violated their duties under the Arizonans with Disabilities Act, A.R.S. § 41–1492 *et seq.* (2004). The Act prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." A.R.S. § 41–1492.02(A). The Act specifically provides that if any person believes a covered person or entity has engaged in prohibited conduct under the Act, she "*may institute a civil action* for preventive or mandatory relief." A.R.S. § 41–1492.08(A) (emphasis added).

¶ 15 The Act requires the Attorney General to adopt regulations to carry out the intent of the article. A.R.S. § 41–1492.06(A). *See* A.A.C. R10–3–401 *et seq.* Those regulations specifically allow a person to "file a complaint on the basis of disability in accordance with the provisions of this Article" with the Attorney General. A.A.C. R10–3–405(A). If after investigation the Attorney General concludes that judicial action is appropriate, the Attorney General may file a civil action for appropriate relief. A.R.S. § 41–1492.09(A). In such a civil action, the court has authority to award any appropriate equitable relief and monetary damages. A.R.S. § 41–1492.09(B).

¶ 16 But the regulations also provide that "[f]ailure to file an administrative complaint [with the Attorney General] pursuant to this Section does *not* prevent an aggrieved person from bringing a civil action in Superior Court pursuant to A.R.S. § 41–1492.08." A.A.C. R10–3–405(L) (emphasis added). By the express terms of the regulations, an ag-

grieved party need not avail herself of the administrative process provided by the Attorney General before bringing a civil action for discrimination under the Act. And nothing in the Act or the regulations provides for, much less requires, any other administrative process as a prerequisite to a civil action.

¶ 17 Under A.R.S. § 36–506(B), clients are guaranteed the right to be free from discrimination.[11] The Department's regulations implement that policy in A.A.C. R9–21–201(A)(3). According to that regulation, a client has:

> The right to be free from unlawful discrimination by the Department or by any mental health agency on the basis of ... physical or mental handicap or degree of handicap; provided, however, classifications based on ... category or degree of handicap shall not be considered discriminatory, if based on written criteria of client selection developed by a mental health agency and approved by the Department as necessary to the safe operation of the mental health agency and in the best interests of the clients involved.

The same regulation guarantees clients the civil right to sue as well as the right "to exercise all other rights, entitlements, privileges, [and] immunities provided by law" and the "same civil rights as all other citizens of Arizona." A.A.C. R9–21–201(A)(1), (15), (16).

¶ 18 Because the Legislature empowered the Department to act on discrimination claims, it might be argued that it intended to require exhaustion. But the Act separately authorizes both an aggrieved individual and the Attorney General to institute civil actions to redress discrimination. A.R.S. § 41–1492.08–.09. And the Department's own regulations nowhere purport to limit a client's right to sue pursuant to A.A.C. R9–21–201(A)(1). Further, some of the express purposes of A.R.S. § 41–1492 are to "[p]rovide a clear and comprehensive state mandate for the elimination of discrimination against individuals with disabilities" and to "[p]rovide clear, strong, consistent and enforceable

---

**11.** For purposes of Title 36, Chapter 5, "discrimination" means "any denial of civil rights on the grounds of hospitalization or outpatient care and

treatment unrelated to a person's present capacity to meet the standards applicable to all persons." A.R.S. § 36–506(C).

standards addressing discrimination." 1992 Ariz. Sess. Laws, ch. 224, § 1(B)(1)-(2) (2d Reg.Sess.). While the statutes give courts the authority to award appropriate monetary or equitable relief to redress discrimination, no regulation gives the Department similar authority.[12]

¶ 19 We conclude that the Department did not have original jurisdiction over Bailey–Null's discrimination claim under the Arizonans with Disabilities Act. We therefore hold that the doctrine of exhaustion does not apply to that claim.

### 3. Assault and Battery

¶ 20 Bailey–Null alleges that the Defendants assaulted her and committed a battery when they caused her to be injected with medication without her informed consent. A health care provider commits common law battery when a medical procedure is performed on a patient without that patient's consent. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 309, ¶ 9, 70 P.3d 435, 438 (2003).

¶ 21 Traditional tort claims fall within the general jurisdiction of the courts. *Qwest Corp. v. Kelly*, 204 Ariz. 25, 28, ¶ 7, 59 P.3d 789, 792 (App.2002). Trial courts are "most familiar and capable of dealing" with tort claims. *Id.* at 32, ¶ 18, 59 P.3d at 796 (quoting *Campbell v. Mountain States Tel. & Tel. Co.*, 120 Ariz. 426, 431–32, 586 P.2d 987, 992–93 (App.1978)).

¶ 22 Under the Department's regulations, the prohibition against mistreatment includes the right to be free from "[a]ny other unreasonable use or degree of force or threat of force not necessary to protect the client ... from bodily harm." A.A.C. R9–21–203(A)(3). In the administrative proceeding, the ALJ made extensive findings regarding Bailey–Null's "forced injection" and concluded that the procedure violated her rights. But nothing in the Department's regulations provides a damage remedy, and the ALJ awarded none.

¶ 23 We conclude that the exhaustion doctrine is inapplicable to those claims.

### 4. Medical Malpractice

¶ 24 Finally, Bailey–Null alleges that the Defendants committed medical malpractice. In Arizona, medical malpractice claims are governed by statute. *Nunsuch ex rel. Nunsuch v. United States*, 221 F.Supp.2d 1027, 1032 (D.Ariz.2001). A medical malpractice action is one "for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services ... or other health-related services, without express or implied consent." A.R.S. § 12–561(2) (2003). Medical malpractice actions can be brought against a health care provider only on the grounds listed in A.R.S. § 12–561. A.R.S. § 12–562(A). They cannot be based upon assault and battery. A.R.S. § 12–562(B). The medical malpractice act provides a supplement to other civil remedies. *Estate of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 531, ¶ 22, 57 P.3d 384, 390 (2002).

¶ 25 Like APSA claims, medical malpractice actions are statutory causes of action that may be brought in the superior court. The Department's regulations do not contain any provision dealing directly with medical malpractice, though they do provide that no mental health agency shall mistreat a client by negligent act or omission. A.A.C. R9–21–203(A). The absence of any express statutory authority for the Department to provide damage remedies for medical malpractice leads us to conclude that the Legislature did not intend the Department to have original jurisdiction over medical malpractice actions arising from treatment by an RBHA.

### 5. This Case Is Distinguishable From Those That Have Required Exhaustion.

¶ 26 In *St. Mary's Hospital and Health Center v. State*, the court held that hospitals

---

12. The regulations do allow the director to "[i]mpos[e] sanctions, including monetary penalties, according to terms of a contract, if applicable" after reviewing the report of investigation of a grievance. A.A.C. R9–21–406(F)(4). We conclude that contractual penalties imposed by an administrative agency are materially different from an individual's right to seek damages under the Arizonans with Disabilities Act.

and health care providers had to exhaust their administrative remedies on claims for payment for services rendered to members of Arizona Health Care Cost Containment System Administration ("AHCCCS"). 150 Ariz. 8, 9, 721 P.2d 666, 667 (App.1986). AHCCCS adopted a grievance and appeal process "for all claims for payments arising from the delivery of hospitalization and medical care under the system." *Id.* at 10, 721 P.2d at 668. The court refused to address the claimant's arguments based on state and federal statutes and regulations because the claims were "inextricably intertwined" with claims for nonpayment of hospital and medical services. *Id.* at 10–11, 721 P.2d at 668–69. Here, Bailey–Null's claims for civil damages are rooted in the same essential facts as her administrative grievances. But the civil and administrative claims are not "inextricably intertwined"—they involve different proof requirements and different remedies. There is nothing about the administrative process in this case that would be harmed, and nothing about the judicial process that would be helped, if exhaustion were required.

¶ 27 Likewise, in *Moulton v. Napolitano*, a number of plaintiffs who owned vehicles that had qualified for certain state-funded incentives sued the State for bad faith, breach of contract, and other violations of their constitutional rights when the Legislature repealed and modified the benefits once available to owners of such vehicles. 205 Ariz. at 509, ¶ 1, 73 P.3d 637. The court noted that when alleged constitutional violations were "inextricably intertwined" with government benefits for which administrative remedies exist, an exhaustion of remedies is required. *Id.* at 512, ¶ 16, 73 P.3d at 643.

¶ 28 The holdings in *St. Mary's Hospital* and *Moulton* have no application here. AHCCCS has mandatory and exclusive jurisdiction over disputes regarding payment of claims, such as those which were alleged in *St. Mary's Hospital.* 150 Ariz. at 10, 721 P.2d at 668. Similarly, the Arizona Department of Revenue has mandatory, exclusive jurisdiction over all tax matters. *Moulton,* 205 Ariz. at 512, ¶ 14, 73 P.3d at 643. Even though the plaintiffs in *Moulton* raised constitutional claims, those claims were alterna-

tive legal theories for the same relief at issue in the administrative arena. *Id.* at 514, ¶ 22, 73 P.3d at 645.

¶ 29 Finally, we find *City of Tucson v. Superior Court (ABC Trade Schools, Inc.),* 127 Ariz. 205, 619 P.2d 33 (App.1980), distinguishable. In *City of Tucson,* the plaintiffs' claims concerned the distribution of certain federal funds. *Id.* at 206–07, 619 P.2d at 34–35. A sponsor of the Comprehensive Employment and Training Act accepted a recommendation for funding and distributed the funds to the plaintiffs' competitor, which the plaintiffs challenged. *Id.* The court held that the exhaustion of remedies doctrine applied to bar the plaintiffs' civil claims because the Act provided a thorough administrative procedure under which the secretary was authorized to correct violations and because Congress, relying on the Secretary's expertise, "has established an elaborate system of administrative review, which would appear intended to be exclusive." *Id.* at 208, 619 P.2d at 36 (quoting *CETA Workers' Org. Comm. v. City of New York,* 617 F.2d 926, 933–34 (2d Cir.1980)). In this case, there is no process in the governing statute that appears intended to be exclusive. And while the administrative process in *City of Tucson* was capable of correcting regulatory violations concerning the distribution of funds (thereby affording plaintiff the essential relief he sought) there is no indication that the Legislature intended to grant the Department authority to establish a tribunal to hear all damage claims that might arise against an RBHA.

### III. Attorneys' Fees

¶ 30 Bailey–Null requests attorneys' fees on appeal pursuant to Rule 11 of the Arizona Rules of Civil Procedure, A.R.S. § 12–341.01(C), and A.R.S. § 12–349(A). Bailey–Null argues that sanctions are appropriate because the Defendants could not have had a good-faith belief that the exhaustion of remedies doctrine applied. We disagree.

¶ 31 Although we reverse the superior court's judgment, we do not believe that the Defendants' position was frivolous. These facts presented an issue of first impression. We therefore deny Bailey–Null's request for

attorneys' fees. However, as the successful party, Bailey–Null is entitled to her costs upon her compliance with ARCAP 21(c).

## CONCLUSION

¶ 32 For the foregoing reasons, we hold that a complainant is not required to exhaust her administrative remedies before the Arizona Department of Health Service's Behavioral Health Division before seeking judicial remedies for claims based on the Arizona Adult Protective Services Act, the Arizonans with Disabilities Act, common law assault and battery, and medical malpractice. Accordingly, we reverse the superior court's judgment dismissing Bailey–Null's claims against the Defendants, and remand for further proceedings consistent with this opinion.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and PATRICK IRVINE, Judge.